## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDITH JELTSJE PIETERSEN, *et al.*,

                *Plaintiffs*,

      v.

U.S. DEPARTMENT OF STATE, *et al.,*

             *Defendants.*

No. 22-cv-3544 (DLF)

## <u>MEMORANDUM OPINION</u>

Judith Pietersen, a Dutch citizen, seeks to enter the United States to marry her American fiancé Daniel Brown. After several unsuccessful attempts to enter the United States, Pietersen twice applied for a K-1 nonimmigrant visa. Both K-1 visa applications were denied. In the First Amended Complaint, Pietersen and Brown bring claims under the Immigration and Nationality Act, Due Process Clauses of the Fifth and Fourteenth Amendments, First Amendment, Mandamus Act, and Declaratory Judgment Act. They seek, among other things, an order from this Court vacating the K-1 visa denials and directing the State Department to readjudicate Pietersen's visa application. Before the Court is the defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss at 1, Dkt. 11. For the reasons that follow, the Court will grant the motion and dismiss the First Amended Complaint under Rule 12(b)(6).

## I.      BACKGROUND

### A.      Statutory and Regulatory Background

The U.S. Visa Waiver Program permits citizens from 41 countries, including the Netherlands, to "travel to the United States for business or tourism for stays of up to 90 days

without a visa." *U.S. Visa Waiver Program*, U.S. Dep't of Homeland Sec., https://www.dhs.gov/visa-waiver-program [https://perma.cc/9MER-5XQC]; *see Visa Waiver Program*, U.S. Dep't of St., https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visa-waiver-program.html [https://perma.cc/XLY4-USLE]. Using the Electronic System for Travel Authorization, a noncitizen can determine his or her eligibility to travel to the United States under the Visa Waiver Program. *Frequently Asked Questions About the Visa Waiver Program (VWP) and the Electronic System for Travel Authorization*, U.S. Dep't of Homeland Sec., https://www.cbp.gov/travel/international-visitors/frequently-asked-questions-about-visa-waiver-program-vwp-and-electronic-system-travel [https://perma.cc/TWB5-DBMC]. If, however, an "alien previously was admitted without a visa" under the Visa Waiver Program, "the alien must not have failed to comply with the conditions of any previous admission as such a nonimmigrant." 8 U.S.C. § 1187(a)(7). A failure to comply will require a noncitizen to apply for a nonimmigrant visa to travel to the United States. *See Frequently Asked Questions*, *supra*.

As relevant here, a noncitizen who "is the fiancée . . . of a citizen of the United States . . . and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission" may apply for a "K-1" nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(K)(i). The process to obtain a K-1 visa, however, is "multistep." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 90 (D.D.C. 2020). First, the noncitizen's American fiancé(e) must submit a petition, known as a Form I-129F, to the Department of Homeland Security (DHS). *See* 8 U.S.C. § 1184(d)(1); *I-129F, Petition for Alien Fiancé(e)*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-129f [https://perma.cc/S2TD-D7TY]. Second, after DHS approves the petition, it is forwarded to the National Visa Center (NVC). *See Visas for Fiancé(e)s of U.S. Citizens*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/family/family-of-us-

citizens/visas-for-fiancees-of-us-citizens [https://perma.cc/M3FT-ZLQU].   Finally, the NVC forwards the visa application to a U.S. Embassy or consulate where the noncitizen fiancé(e) intends to apply for a K-1 visa.   *Id.*  A consular officer is then responsible for interviewing the noncitizen fiancé(e), reviewing the application, determining the couple's "bona fide intent to establish a life together," and requesting any appropriate background check.  *Id.*

After a noncitizen has "properly completed and executed" a "visa application" and interviewed, a "consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order . . . discontinue granting the visa."  22 C.F.R. § 41.121(a).  "No visa or other documentation shall be issued" if (1) "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law"; (2) "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder"; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law."  8 U.S.C. § 1201(g).  As relevant here, under section 1182, a noncitizen "who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa . . . or admission into the United States or other benefit provided" is inadmissible.  *Id.* § 1182(a)(6)(C)(i).

### B.    Factual Background

Judith Jeltsje Pietersen is a citizen of Netherlands.  First Am. Compl. ¶ 19, Dkt. 10. Pietersen is "a highly successful horse trainer and expert dressage rider," and she has "traveled regularly to the United States" under the Visa Waiver Program.  *Id.* ¶¶ 31, 32.  "From time to time," Pietersen visited the United States to conduct "horse-riding clinics" for which she

"receive[d] some nominal compensation in exchange for her guidance." *Id.* ¶ 34. Pietersen's fiancé Daniel Brown is a U.S. citizen and "successful author and public figure." *Id.* ¶¶ 20, 30.

Over the last few years, Pietersen has unsuccessfully attempted to enter the United States on four separate occasions. First, on February 18, 2020, Pietersen was denied entry for a skiing trip under the Visa Waiver Program. *Id.* ¶ 36. Upon her arrival at the Minneapolis-St. Paul International Airport, a U.S. Customs and Border Protection (CBP) officer showed Pietersen a "Facebook page [printout] reflecting her prior participation in [the] riding clinic" for pay, which constituted "unlawful employment" in violation of the Visa Waiver Program. *Id.* ¶¶ 36, 38. CBP revoked her Electronic System for Travel Authorization approval, which meant "she would need to secure a visa . . . before attempting any subsequent U.S. entry." *Id.* ¶ 39. Given Pietersen lacked any such valid unexpired visa, she was refused entry and returned to the Netherlands. *Id.* ¶¶ 38, 40 (citing 8 U.S.C. § 1182(a)(7)(A)(i)).

Second, Pietersen unsuccessfully applied for a B-2 visa based on "previously scheduled medical appointments in the United States." *Id.* ¶ 42; *see* 8 U.S.C. § 1101(a)(15)(B) (noting a B-2 visa is available to noncitizens "having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States . . . temporarily for pleasure"); 22 C.F.R. § 41.31(b)(2)(i) (defining "pleasure" to include "medical treatment"). Pietersen "brought a range of relevant documents" to her consular interview on February 21, 2020, but the "consular officer refused to accept or review any of these documents." First Am. Compl. ¶ 45. The officer refused the visa application because Pietersen lacked "ties that will compel [her] to return to [her] home country after [her] travel to the United States." *Id.* ¶¶ 46, 47; *see* 8 U.S.C. § 1101(a)(15)(B).

Third, Pietersen and Brown "decided to pursue" permanent residence based on their plans to marry and initiated a K-1 visa application. First Am. Compl. ¶ 49. On March 10, 2021, Brown

4

submitted a Petition for Alien Fiancé(e) (Form I-129F), and the petition was approved on February 2, 2022. *Id.* ¶ 51. On May 17, 2022, Pietersen went to a K-1 visa interview at the U.S. Consulate in Amsterdam. *Id.* ¶ 53. Pietersen brought supporting documentation, but "the consular staff refused to accept or review any of these critical documents." *Id.* ¶ 55. After "a brief interview," Pietersen received "another visa denial notice," the basis of which was misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i). First Am. Compl. ¶ 56.

Finally, Pietersen applied for a second K-1 visa, but this too proved unsuccessful. On May 9, 2023, Pietersen "attended a second K-1 visa interview," and four days before the interview, her lawyer provided the consulate "a detailed submission," including a sworn statement and legal brief. *Id.* ¶ 60. At the interview, the "consular officer did not address or inquire about the additional supporting documents" and asked "why Ms. Pietersen was applying again after her previous K-1 visa had been refused." *Id.* ¶ 62. Her second K-1 application was ultimately refused, again on misrepresentation grounds. *Id.* ¶ 63.

Pietersen and Brown sued the State Department, Secretary of State Antony Blinken, and Assistant Secretary Rena Bitter (Defendants). *Id.* ¶¶ 19–23. The plaintiffs principally contend that the defendants acted unlawfully by refusing to review information submitted in Pietersen's K-1 visa applications and by applying a "reason to believe" standard in adjudicating the misrepresentation ground of inadmissibility.[1] *Id.* ¶¶ 112–132. They claim that this unlawful conduct violated the Immigration and Nationality Act (INA), Due Process Clauses of the Fifth and Fourteenth Amendments, First Amendment, Mandamus Act, and Declaratory Judgment Act. *Id.* As relief, the plaintiffs request, among other things, declaratory relief that Pietersen's K-1 visa application was denied through unlawful process, vacatur of her "recent visa refusals," and an

---

[1] Although the complaint discusses Pietersen's B-2 visa application, it does not seek judicial review of that denial and focuses instead on her K-1 visa applications. *See* First Am. Compl. ¶¶ 41–48, Dkt. 10.

order "direct[ing]" the defendants to re-adjudicate Pietersen's visa application. *Id.* at 26. On July 6, 2023, the defendants moved to dismiss. *See* Mot. to Dismiss, Dkt. 11.

After the defendants moved to dismiss, on January 12, 2024, the Supreme Court granted a petition for a writ of certiorari in *Department of State v. Muñoz*. This case presents two questions: whether (1) "a consular officer's refusal of a visa to a U.S. citizen's noncitizen spouse impinges upon a constitutionally protected interest of the citizen" and (2) "notifying a visa application that he was deemed inadmissible under 8 U.S.C. 1182(a)(3)(A)(ii) suffices to provide any process that is due." Question Presented, *Department of State v. Muñoz*, No. 23-334. In light of *Muñoz*, this Court *sua sponte* scheduled a hearing on whether a stay pending a final decision in *Muñoz* is warranted and requested briefing from the parties. The defendants oppose a stay, *see* Defs.' Opp'n to Pls.' Request for Partial Stay at 1, Dkt. 20, and the plaintiffs also oppose a stay except as to their challenge to the "reason to believe" standard, *see* Pls.' Mem. in Opp'n to Stay at 1, Dkt. 19.

## II.   LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal law empowers federal district court judges to hear only certain kinds of cases, and the plaintiffs bear the burden of establishing that their case falls within that limited jurisdiction. *Id.* When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). A court "may undertake an independent investigation" that examines "facts

developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (cleaned up). A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 12(b)(6) does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.   ANALYSIS

The Court has jurisdiction to hear this case, but the doctrine of consular nonreviewability bars the plaintiffs' claims on the merits.  In addition, the Court concludes that a stay of proceedings is unwarranted.

### A.    Article III Standing

Brown has established his Article III standing to sue, permitting the Court to proceed to the merits.  "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by

the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Brown has satisfactorily alleged that he suffered a concrete injury from the denial of Pietersen's K-1 visa applications. "Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms," including "harms specified by the Constitution itself." *Id.* at 2200, 2204 (cleaned up). The denial of a statutory right to a visa might be "insufficient to create Article III standing" alone. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). But here, Brown alleges that the denial of Pietersen's K-1 visa applications caused substantive harm: namely, interference with his "relationship with his non-citizen fiancée." First Am. Compl. ¶ 109. In *Trump v. Hawaii*, the Supreme Court held that "a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact." 138 S. Ct. 2392, 2416 (2018). Although Brown and Pietersen are not technically "relatives" as they remain unmarried, the Court must "assume the truth of all material factual allegations in the complaint," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139, including their allegation that they are in "a bona fide relationship" with the intention to marry, *Hawaii*, 138 S. Ct. at 2416. *See, e.g.*, Compl. ¶¶ 49, 109. Given his "bona fide relationship with a particular person seeking to enter the country," Brown "can legitimately claim concrete hardship if that person is excluded." *Hawaii*, 138 S. Ct. at 2416 (quoting *Trump v. IRAP*, 137 S. Ct. 2080, 2089 (2017) (per curiam)).

The Court does not decide whether Pietersen has also pleaded an injury in fact because "if many plaintiffs seek the same relief and at least one of them has Article III standing, the court need not determine whether others also do." *M.M.V. v. Garland*, 1 F.4th 1100, 1110 (D.C. Cir. 2021)

(citing *Rumsfeld v. Forum for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006)). Brown and Pietersen indisputably seek the same relief. *See* Compl. at 26. The Court's standing inquiry is thus at its end.

The defendants' arguments to the contrary are unavailing. First, they point to "a long line of cases explaining that non-resident[s] . . . lack standing to challenge the determinations associated with their visa applications." Mot. to Dismiss at 11 (quoting *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 5 (D.D.C. 2009)). Even assuming these precedents speak to the standing of a U.S. citizen like Brown, the Court previously rejected this argument, noting the dubious "pedigree of the 'long line of cases,'" which appears to conflate the jurisdictional issue of standing with the merits issue of consular nonreviewability. *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024). The Court sees no reason to deviate from its prior ruling.

Second, the defendants argue Brown "has failed to allege any cognizable constitutional injury connected to the denial of Ms. Pietersen's visa applications." Mot. to Dismiss at 11 n.4. As discussed in Section III.B.2, *infra*, the Court agrees that Brown lacks a cognizable constitutional right to marry Pietersen in the United States. But a lack of a constitutional right does not preclude standing. Indeed, "harms specified by the Constitution itself" are but one means for a plaintiff to establish a concrete injury in fact. *TransUnion*, 141 S. Ct. at 2204. Plaintiffs may, just as Brown has done here, plead "intangible harms . . . with a close relationship to harms traditionally recognized." *Id.*; *see Pourabdollah*, 2024 WL 474523, at *4. Brown thus has Article III standing.

## B.    Consular Nonreviewability

Although Brown has standing, the doctrine of consular nonreviewability bars the plaintiffs' claims. "Consular nonreviewability shields a consular official's decision to issue or withhold a

visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). "Decisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Id.* (cleaned up). The Immigration and Nationality Act "grants consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations," and it is ultimately the consular officer that "has the authority to grant, deny, or revoke any visa." *Id.* (cleaned up).

The doctrine has "two narrow exceptions." *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023). The first applies when "a statute expressly authorizes judicial review," and the second applies when "the exclusion of a noncitizen . . . burdens [a] citizen's constitutional rights." *Baan Rao Thai Rest.*, 985 F.3d at 1025–26 (cleaned up). Neither exception applies here.

## 1. *Application to Plaintiffs' Claims*

The doctrine of consular nonreviewability, which bars judicial "review of a consular officer's visa decisions," *Baan Rao Thai Rest.*, 985 F.3d at 1025, plainly bars review of "Pietersen's recent visa refusals," Compl. at 26. The plaintiffs' remaining claims—the consular officers' alleged failure "to accept or consider . . . information" and erroneous application of a "reason to believe" standard to Pietersen's application, *id.*—cannot "be separated from the [visa] decision itself," *Cevallos v. U.S. Dep't of State*, No. 22-cv-2602, 2023 WL 6276622, at *4 (D.D.C. Sept. 26, 2023). The plaintiffs would have the Court "order [a] consular officer to review certain documents and revisit her decision" under a new standard, "interfer[ing] with the process of the

decision" on the visa application.  *Id.* at *5 (cleaned up).   But the doctrine of consular nonreviewability precludes the Court from doing so.

The plaintiffs resist this conclusion, arguing that "Pietersen does not challenge the ultimate decision by Defendant State Department to deny her visa application, but rather the lack of pre-decisional process."  Compl. ¶ 105; *see* Opp'n at 13–16, Dkt. 14.  They contend the "pre-decisional process" afforded violated the Administrative Procedure Act (APA) and Take Care Clause. Neither argument has force.

First, the plaintiffs' APA claim is meritless.  They ask the Court to "strik[e] erroneous guidance and instruct[] the agency to" revise the "reason to believe" standard in the *Foreign Affairs Manual*—"a quintessential APA function that cannot plausibly be barred by consular nonreviewability."  Opp'n at 19.  But the plaintiffs' complaint contains no APA claim.  *See* Reply at 10 n.4, Dkt. 16.  And even if they had alleged such a claim, the "D.C. Circuit has squarely held that the APA provides no basis for challenging consular decisions."  *Carter v. U.S. Dep't of Homeland Sec.*, No. 21-cv-422, 2021 WL 6062655, at *5 (D.D.C. Dec. 22, 2021).  Indeed, consular nonreviewability "applies even where it is alleged that the consular officer failed to follow regulations . . . where the applicant challenges the validity of the regulations . . . or where the decision is alleged to have been based on a factual or legal error."  *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002).  Reviewing the "reason to believe" standard under 5 U.S.C. § 706(2) would require the Court to scrutinize "the predicate for the [visa] decision," which "necessarily causes the Court to interfere with the process of the decision which it has been precluded from reviewing."  *Chun*, 223 F. Supp. 2d at 207.  The Court declines to engage in such "second-guessing" of a "consular officer's decision."  *Baan Rao Thai Rest.*, 985 F.3d at 1023.

Even if the Court were to entertain the plaintiffs' APA challenge to the "reason to believe" standard, their argument lacks merit.  The crux of their position is that the *Foreign Affairs Manual* contains a "reason to believe" standard, but the relevant statute, 8 U.S.C. § 1182(a)(6)(C)(i), contains no such language, *see* Opp'n at 17.  The Court is unpersuaded.  8 U.S.C. § 1201(g), which renders § 1182(a)(6)(C)(i) operative, *does* contain "reason to believe" language.  Specifically, 8 U.S.C. § 1201(g) states that "[n]o visa" shall issue if a consular officer "knows or has reason to believe that [an] alien is ineligible to receive a visa . . . under section 1182 of this title."  Thus, even if consular nonreviewability did not bar the claim, the Court would have no basis to hold unlawful and set aside the "reason to believe" standard because it tracks the statutory text.

Second, for much the same reason, the plaintiffs' Take Care Clause argument fares no better.  The Take Care Clause provides that the President "shall take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  Although not a model of clarity, the plaintiffs' argument appears to challenge 8 U.S.C. § 1104(a)'s delegation of the "powers, duties, and functions . . . relating to the granting or refusal of visas" to consular officers.  *See Saavedra Bruno*, 197 F.3d at 1158 n.2 ("Consular officers have complete discretion over issuance and revocation of visas.").  Like their APA claim, however, the plaintiffs do not plead a Take Care Clause claim, and the claim would "necessarily cause[] the Court to interfere with the process of the decision which it has been precluded from reviewing."  *Chun*, 223 F. Supp. 2d at 207.

Moreover, even if review was proper, the argument fails to persuade.  The plaintiffs invoke *Heckler v. Chaney*, in which the Supreme Court held that an "agency's decision not to take enforcement action should be presumed immune from judicial review under [5 U.S.C.] § 701(a)(2)."  470 U.S. 821, 832 (1985).  This presumption may be rebutted when, for example, a "substantive statute has provided guidelines for the agency to follow in exercising its enforcement

powers" or the agency has "consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." *Id.* at 833 & n.4 (cleaned up). But as the plaintiffs seem to concede, *see* Opp'n at 20, *Chaney* governs judicial review of an agency's nonenforcement decision, not an agency's decision to act on a visa application. In any event, neither *Chaney* exception applies here. The INA may contain "guidance" for consular officers reviewing visas, but that "does not demonstrate Congress's intent to allow judicial review" under the first exception. *Cevallos*, 2023 WL 6276622, at *6. The plaintiffs present no specific evidence that Congress "limit[ed]" or "otherwise circumscrib[ed]" consular officers' "exercise of enforcement power." *Chaney*, 470 U.S. at 833. Nor do they contend with Congress's contrary command under section 104(a) of the INA, which "courts have construed to 'grant[] consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Cevallos*, 2023 WL 6276622, at *6 (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1024). And contrary to the plaintiffs' suggestion, *see* Opp'n at 21, the State Department's adherence to consular independence does not abdicate responsibility under the second exception; rather, it reflects respect for Congress' command of consular independence, *see* 8 U.S.C. § 104(a).

## 2. *Exceptions to Consular Nonreviewability*

Neither exception to the doctrine of consular nonreviewability rescues the plaintiffs' claims. First, Congress has not "expressly authoriz[ed] judicial review" of the plaintiffs' claims under 8 U.S.C. § 1182(a)(6)(C) and 8 U.S.C. § 1201(g). *Baan Rao Thai Rest.*, 985 F.3d at 1025. As a general matter, "the D.C. Circuit has stated, categorically, that 'the immigration laws'—of which" § 1182 and § 1201 "are indisputably a part—'preclude judicial review of consular visa decisions.'" *Colindres v. U.S. Dep't of State*, 575 F. Supp. 3d 121, 140 (D.D.C. 2021) (quoting

13

*Saavedra Bruno*, 197 F.3d at 1162)), *aff'd*, 71 F.4th 1018 (D.C. Cir. 2023).   Further, neither provision's text "meet[s] the stringent requirement" of express authorization of judicial review. *Colindres*, 575 F. Supp. 3d at 140.   8 U.S.C. § 1182(a)(6)(C)(i) defines a ground of inadmissibility based on a noncitizen's "fraud or willfully misrepresenting a material fact . . . to procure . . . a visa" or "admission," and 8 U.S.C. § 1201(g) provides that a consular officer shall not issue a visa upon a finding of inadmissibility under § 1182.   At most, these provisions describe procedures for consular officers, but neither contains a hint of authorizing judicial review.   Nor have the plaintiffs "point[ed] to a single case finding statutory authorization for judicial review of a consular visa decision." *Colindres*, 575 F. Supp. 3d at 140; *see* Opp'n at 15–16.

Second, the Court rejects the plaintiffs' contention, *see* Opp'n at 14; First Am. Compl. ¶¶ 109–110, that the denial of Pietersen's visa has "placed an unjustifiable burden on" Brown's rights under the Fifth Amendment and First Amendment, *Kleindienst v. Mandel*, 408 U.S. 753, 763 (1972).   Brown alleges that the denial of Pietersen's visa applications has burdened his "fundamental right to pursue a relationship with his non-citizen fiancée within the United States" under the Fifth Amendment's Due Process Clause.   First Am. Compl. ¶ 109.   But the D.C. Circuit recently rejected this argument in *Colindres*, holding that "a citizen's right to marry is not impermissibly burdened when the government refuses [his] spouse a visa."   71 F.4th at 1023. Although *Colindres* concerned a married couple, not fiancés, its holding applies equally here.

Further, the denial of Pietersen's visa has not violated Brown's First Amendment rights by forcing him to "choose between his relationship and his career as an author, speaker, and public figure."   First Am. Compl. ¶ 110.   Brown "cannot reframe [his] due process claim as a First Amendment claim" because, as other judges in this district have recognized, "whether the right to marriage is 'cast as a due process right or an associational right does not alter the analysis.'"

14

*Carter*, 2021 WL 6062655, at \*5 (cleaned up) (citing *Colindres*, 575 F. Supp. 3d at 138).
*Colindres* thus forecloses the plaintiffs' argument, whether raised under the First Amendment or
Due Process Clause. *See id.* To the extent the plaintiffs separately allege the denial of Pietersen's
visa has "chill[ed] the speech of" Brown, First Am. Compl. ¶ 110, this allegation is conclusory
and thus insufficient to state a First Amendment claim, *see Iqbal*, 556 U.S. at 678. In any event,
the fact that the denial of Pietersen's visa might indirectly reduce Brown's writing is not enough
to show a First Amendment violation. *Cf. Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965).

        3. *Merits*

        Finally, even if the constitutional-rights exception were to apply, the plaintiffs' claims
would fail on the merits. "When the constitutional-rights exception to consular non-reviewability
doctrine applies, judicial review is 'deferential.'" *Colindres*, 71 F.4th at 1024 (quoting *Trump v.
Hawaii*, 138 S. Ct. 2392, 2419 (2018)). The Court "ask[s] only whether the government has given
'a facially legitimate and bona fide reason' for denying a visa." *Id.* (quoting *Mandel*, 408 U.S. at
770). This "requirement is easy to satisfy," and "the [g]overnment need provide only a statutory
citation to explain a visa denial" assuming the "statutory provision . . . 'specifies discrete factual
predicates the consular officer must find to exist before denying a visa.'" *Id.* (first quoting *Hawaii*,
138 S. Ct. at 2419; and then quoting *Din v. Kerry*, 576 U.S. 86, 105 (2015) (Kennedy, *J.*,
concurring)). "[E]ven if the government fails to cite a statute, it may still meet its burden by
'disclos[ing] the facts motivating [its] decision.'" *Id.* (quoting *Din*, 576 U.S. at 105 (Kennedy, *J.*,
concurring)).

        This requirement is easily met here. As the plaintiffs concede, the consular officers who
denied Pietersen's K-1 visa applications cited 8 U.S.C. § 1182(a)(6)(C)(i) as the basis for denial.
*See* First Am. Compl. ¶¶ 56, 63. This provision contains a discrete factual predicate a consular

15

officer must find before denying a visa: namely, that a noncitizen, "by fraud or willfully misrepresenting a material fact" sought to procure a visa "or admission into the United States." 8 U.S.C. § 1182(a)(6)(C)(i); *see Singh v. Tillerson*, 271 F. Supp. 3d 64, 72 (D.D.C. 2017) (holding that 8 U.S.C. § 1182(a)(6)(C)(i) is a "facially legitimate reason for denial of visa applications"). And even if the consular officers had not provided such citations, it was plainly explained to Pietersen that "the consulate still sees her as 'guilty of misrepresentation' based on her having earned money on an ESTA while in the" United States. First Am. Compl. ¶ 63. There was thus a bona fide factual basis to deny Pietersen's visa application.

Furthermore, the plaintiffs have failed to cast doubt on this conclusion with evidence of bad faith. "[A]n 'affirmative showing of bad faith on the part of the consular officer' can demonstrate the government failed to give a 'bona fide' reason for its actions." *Colindres*, 71 F.4th at 1025 (quoting *Din*, 576 U.S. at 105–06 (Kennedy, *J.*, concurring)). A "litigant must provide clear evidence of bad faith." *Id.* (cleaned up). The plaintiffs have not done so. Their evidence of "bad faith" is that consular officers (1) refused to review materials allegedly rebutting Pietersen's past misrepresentation and (2) applied an erroneous "reason to believe" standard in deciding whether Pietersen made a misrepresentation. *See* First Am. Compl. ¶ 84. But the plaintiffs also concede that Pietersen "did receive some nominal compensation in exchange for guidance" in violation of the Visa Waiver Program. *Id.* ¶ 34. As the D.C. Circuit has held, "disagreeing with the Government's decision to discount [certain] evidence falls well short of the kind of clear showing necessary to establish bad faith." *Colindres*, 71 F.4th at 1025. Also, disagreement, as a matter of law, with the State Department's "reason to believe" interpretation does not constitute evidence of a consular officer's bad faith. Nor have the plaintiffs pointed to any other basis for a

bad-faith finding, such as ad hoc or inconsistent judgments or a departure from consistent and longstanding precedents.  *See NRDC v. SEC*, 606 F.2d 1031, 1049 n.23 (D.C. Cir. 1979).

Because the doctrine of consular nonreviewability bars the plaintiffs' claims, the Court will dismiss the complaint under Rule 12(b)(6).

### C.       Stay of Proceedings

Finally, the Court concludes that a stay of this case pending the Supreme Court's decision in *Department of State v. Muñoz*, No. 23-334, is unwarranted.  "In the case of independent proceedings, a stay may be warranted where the resolution of other litigation will likely 'narrow the issues in the pending cases and assist in the determination of the questions of law involved.'" *Hully Enter. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 253 (1936)).  The burden is on the movant to "make out a clear case of hardship or inequity in being required to go forward."  *Landis*, 299 U.S. at 255.

At the outset, for the reasons stated in Section III.B.1, *supra*, the Court rejects the plaintiffs' argument that their challenge to the "reason to believe" standard is independent of their challenge to Pietersen's visa denials.  The two issues are inextricably linked, and both challenges are thus barred under the doctrine of consular nonreviewability.  The sole question before the Court thus is whether a stay pending *Muñoz* is warranted to apply the doctrine of consular nonreviewability.

The Court concludes that it is not.  First, a stay would not "narrow the issues in the pending case[]" nor "assist in the determination of the questions of law involved."  *Landis*, 299 U.S. at 253. The Court is bound to follow the D.C. Circuit's constitutional and bad-faith holdings in *Colindres*: namely, that (1) a U.S. citizen has no constitutional "right to live in America with one's spouse" and (2) a consular officer "need only cite a statute listing a factual basis for denying a visa" to show good faith.  *Colindres*, 71 F.4th at 1020.  True, the Supreme Court in *Muñoz* could resolve

the split in authority in favor of the Ninth Circuit, effectively abrogating *Colindres*'s holdings.  But this Court is "obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting *en banc*, or the Supreme Court, overrule it."  *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997).  Until then, *Colindres* remains good law that this Court must follow.

Second, the plaintiffs have failed to demonstrate a "clear case of hardship" absent a stay.  *Landis*, 299 U.S. at 255.  The only argument they muster is that "claims regarding the due process rights of Plaintiff Brown . . . might be affected by the outcome in *Muñoz*."  Pls.' Mem. in Opp'n to Stay at 7.  Besides this speculative assertion, the plaintiffs do not otherwise provide any evidence of hardship.  Nor could they.  The defendants have already reached a final decision on Pietersen's visa applications, and a stay would not alter that circumstance.  Even if the Supreme Court abrogates *Colindres*'s constitutional holding and the plaintiffs seek relief under Rule 60(b), this Court has already held that the defendants demonstrated a good-faith basis for the visa denial given the citation of a statutory basis with a factual predicate.  And even if the Supreme Court were to abrogate both *Colindres*'s constitutional and bad-faith holdings, the plaintiffs have not presented any "clear evidence" of bad faith.  *Colindres*, 71 F.4th at 1025 (quoting *Din*, 576 U.S. at 105–06 (Kennedy, *J.*, concurring)).  A stay would thus be inappropriate here.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' Motion to Dismiss. A separate order consistent with this decision will accompany this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 21, 2024